**JAVERBAUM WURGAFT HICKS**
**KAHN WIKSTROM & SININS, P.C.**
By: Drake P. Bearden, Jr., Esquire
Attorney PA I.D. 308035
1000 Haddonfield-Berlin Road, Suite 203
Voorhees, NJ 08043
Telephone: (856) 596-4100 x 3050
Facsimile: (856) 702-6640
Email: dbearden@lawjw.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIANNA THOMAS, | : |
| *Plaintiff*, | : |
| v. | : CIVIL ACTION NO.   2:25-cv-4253 |
| BUCKNELL UNIVERSITY, | : |
| *Defendant*. | : **COMPLAINT WITH JURY DEMAND** |

Plaintiff, Brianna Thomas, residing in the State of New York, by way of Complaint against Defendant, says:

## INTRODUCTION

Plaintiff brings this suit against Defendant Bucknell University alleging that Defendant discriminated against her and subjected her to a hostile environment because of her gender, race and disability, retaliated against her for engaging in protected conduct in violation of Title VI of the 1964 Civil Rights Act ("Title VI"), the Americans with Disabilities Act ("ADA"), and the Pennsylvania Human Relations Act ("PHRA").

## PARTIES

1. Plaintiff Brianna Thomas was, at all times relevant herein, a Black woman residing in the Commonwealth of Pennsylvania and State of New York and a former student at

Defendant.

2. Defendant was, at all times relevant herein, a University incorporated in the State of Pennsylvania.

## JURISDICTION

3. This action is brought pursuant to Title VI, the ADA and the PHRA. Jurisdiction is founded on 28 U.S.C. §§1331 and 1343(3) and the aforementioned statutory provisions.

4. Jurisdiction lies under any state laws claims based on the principles of supplemental jurisdiction as codified at 28 U.S.C. §1367.

5. The amount in controversy exclusive of interests and costs exceeds the minimum required amount of $75,000.

## VENUE

6. The claims herein arose within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania. Venue is accordingly invoked according to the dictates of 28 U.S.C. §1391(b) and (c).

7. On March 31, 2025, Plaintiff filed a complaint with the State of Pennsylvania Office of Attorney General requesting the office file claims with Pennsylvania's Human Relations Commission ("PHRC") and dual file with the Equal Employment Opportunity Commission ("EEOC") and Federal Office of Civil Rights ("OCR").

8. Plaintiff also sent a copy of the Complaint to the EEOC to be dual-filed with the EEOC and PHRC.

9. On May 1, 2025, the EEOC issued Plaintiff a Right to Sue letter.

10. Plaintiff reserves the right to amend her claims to file additional claims under the PHRC one year after that claims was dual-filed.

## PLAINTIFF'S ALLEGATIONS

11. The Plaintiff, Brianna Thomas, who is a Black woman, attended Defendant Bucknell University in August 2024 as a senior.

12. Plaintiff stayed at the 7th Street House (hereinafter "7th Street"), which was "Affinity" student housing at Defendant.

13. 7th Street is housing traditionally for Black students.

14. According to Bucknell's own website, 7th Street's "theme" is Umoja and the house strives "to create events that embody the importance of supporting Black people on campus."

15. Plaintiff moved into 7th Street on or around August 23, 2024.

16. The Residential Advisor ("RA") was Saniya Cheatom, a Black woman.

17. Plaintiff stayed on the third floor of 7th Street.

18. A Black woman named Muna Kamara stayed in a room directly below Plaintiff.

19. A man named Elvin Edwards stayed next door to Plaintiff.

20. During Plaintiff's stay at 7th Street, the walls were thin, and she could hear Kamara's, Edwards's and other individual's conversations regularly.

21. At 7th Street, the occupants frequently attended events and participated in a "house chat" which Plaintiff joined.

22. Plaintiff did not attend events that occurred on August 30 and 31, 2024.

23. On September 1, 2024, women were outside of Plaintiff's door complaining about the fact she did not attend a Pizza Hut Party.

24. They said about Plaintiff, she is "such a boring bitch."

25. Plaintiff then went outside to retrieve food she ordered from DoorDash and Kamara stated to Cheatom, "Does she think she is better than me because I DoorDash her food?"

3

26. On or around September 5, 2024, Plaintiff was in her room crying because her aunt recently passed away.

27. Plaintiff heard a female voice outside of her room state, "What the fuck are you crying about, nobody is bothering you Bitch!"

28. On or around September 9, 2024, Plaintiff was walking to class, and two women were walking behind her.

29. Plaintiff heard the women were making fun of her hair, which was dyed blonde at the time.

30. One woman stated Plaintiff thought she was a "White girl" because of the way she wore her hair.

31. On September 12, 2024, Plaintiff heard other women in 7th Street talking about her Instagram photos.

32. They complained that Plaintiff did not wear her hair curly and stated she wanted to be White.

33. They also complained about Plaintiff's clothes and said she dresses like a prostitute.

34. As a result of the comments, Plaintiff removed the pictures from her account.

35. When she did this, the women became upset and said they were going to report her to student health and say Plaintiff was crying and was going to kill herself.

36. On or around September 14, 2024, 7th Street held a cookout.

37. Cheatom told Plaintiff attendance at the events at 7th Street was mandatory.

38. On or around September 15, 2024, Plaintiff heard the women at 7th Street talking about getting her kicked out of the house.

39. The constant harassment and discriminatory comments about Plaintiff made her feel anxious and insecure.

40. Plaintiff enjoyed posting pictures of her outfits online, but every time she did, the women at 7th Street made comments about her Blackness and accused her be wanting to be White.

41. Plaintiff heard Cheatom and Kamara outside of her door stating they should report her to the health center because she is depressed and crying.

42. When Plaintiff changed her photos online because of their comments, Cheatom stated "I fucking hate this bitch. I wish I could get rid of her."

43. On or around September 17, 2024, Plaintiff again heard individuals at 7th Street asking why she never wore her hair curly and making fun of her clothes.

44. Plaintiff heard individuals making comments about everything she posted on social media.

45. She heard men talking amongst themselves and they asked if Plaintiff was a prostitute.

46. One of the men said he would pay her.

47. On the same day, Plaintiff walked to eat at the Bison to meet a friend.

48. When she returned to her dorm, she spoke to Debra Gonkpah, who was the Community Director Coordinator ("CDC").

49. Plaintiff complained to Gonkpah about the discriminatory comments made to her by others at 7th Street.

50. Gonkpah told Plaintiff she should not worry about what other people say about her.

51. When Plaintiff spoke to Gonkpah, other individuals from 7th Street watched her and made comments about Plaintiff.

5

52. As the discrimination and harassment continued, Plaintiff experienced increased anxiety and was very self-conscious.

53. She considered dying her hair back to her natural color because of the discriminatory comments made by other individuals.

54. Individuals began banging on Plaintiff's door and walls and complaining about everything from her bed being too squeaky to playing music.

55. On or around September 27, 2024, individuals continued to make comments about Plaintiff. Someone knocked on her door and asked if she was White and if she had White parents.

56. Plaintiff heard individuals make comments about her pictures and her hair being too straight and referred to her as pathetic.

57. On September 29, 2024, Plaintiff spoke to a former teammate of hers on the track team, Christine Ajo.

58. Plaintiff told Ajo about the discriminatory comments and harassment.

59. When Plaintiff returned to 7th Street, Edmunds commented that it was better when she was gone.

60. Plaintiff then heard a conversation between Cheatom and Ajo.

61. Cheatom said that if Plaintiff said anything about her she would "beat her ass."

62. When Cheatom said that several people giggled and Kamara said, "I will pay to see that."

63. This terrified Plaintiff because she lived in the same house as Cheatom and she was the RA.

64. Later that night, the harassment continued.

65. Edmonds banged on Plaintiff's wall. He said, "I want that bitch out tonight" and "I want her gone."

66. This banging and yelling startled Plaintiff because she was in her bed.

67. Plaintiff was terrified. She got out of her bed for fear that if she moved too much someone would bang on her door because her bed was squeaking.

68. Plaintiff then tried to sleep on the floor, but she heard voices of men and women outside of her door.

69. The residents of 7th Street then threatened to report Plaintiff for masturbating to have her kicked out of the house.

70. The following day, on September 30, 2024, Plaintiff went to Bucknell mental health services for assistance.

71. She spoke to the Staff Counselor at the Student Development Center, Aisha Popoola.

72. Plaintiff included her mother, Deborah Thomas, in the conversation with Popoola.

73. Plaintiff reported the racial, sexual and perceived disability harassment to Popoola, who suggested she also speak with a Title IX Coordinator.

74. Plaintiff's anxiety became so bad she was barely eating or sleeping and had lost weight.

75. Plaintiff was terrified of returning to 7th Street at this point.

76. She was afraid she would be assaulted by Cheatom and the other women in the house.

77. Plaintiff asked if she could be relocated to a temporary room and chose Larison Cottage to move to.

78. On or around September 30, 2024, Gonkpah posted a message on the house group chat that students can reach out to her or the RA if they feel they are being discriminated against.

79. A meeting was scheduled at 7th Street for 5:30 pm.

80. Plaintiff attended the meeting with the hope she could address the discrimination and harassment she was subjected to.

81. However, about five minutes into the meeting, Cheatom left because she claimed she had to deal with another issue.

82. Later that evening, Plaintiff went to her room at 7th Street to collect some of her belongings.

83. On or around October 1, 2024, the Title IX Coordinator at Bucknell, Samanth Hart, contacted Plaintiff to set up a meeting to discuss the discrimination and harassment.

84. Plaintiff reported the discrimination and harassment to Hart.

85. Plaintiff worked with Hart to schedule a meeting as soon as possible.

86. On or around October 3, 2024, Plaintiff was staying at Larrison Cottage.

87. At around 8:30 am, there was a disturbance at her door and someone said, "Go back to Seventh Street House."

88. Plaintiff later went to her prior room at 7th Street.

89. While she was retrieving some of her clothing, someone stated "This is no longer your home."

90. Plaintiff was suffering from extreme stress and anxiety at this point because of the continued harassment.

91. She called her mother and stated she was terrified and just wanted to go home.

92. Plaintiff's mother stated she was on her way to pick Plaintiff up.

93. Plaintiff eventually returned to her room at Larison Cottage to wait for her mother.

94. At 9 pm, Plaintiff's sister called her and said they were on their way.

95. Plaintiff waited for them but became even more anxious because of the extreme harassment she experienced daily over the past two months.

96. Plaintiff wanted to leave the room to wait for her mother and sister but was afraid to leave through the door.

97. Plaintiff became so terrified that she eventually jumped through the third-story window and fell to the ground.

98. As a result of the fall, Plaintiff suffered a puncture to her leg, a wedge compression fracture to her back and a significant laceration on her chin and other cuts and bruises.

99. Plaintiff was transported to the hospital and treated for her injuries.

100. Her mother and sister arrived around the time Plaintiff was being transported and went to the hospital.

101. A psychologist at the hospital asked to speak with Deborah Thomas.

102. She stated someone from Defendant called and said Plaintiff was seen walking around campus paranoid and delusional.

103. Deborah Thomas was in disbelief that individuals at the school knew Plaintiff was walking around campus allegedly paranoid and delusional and no one approached to attempt to assist her or called for help.

104. Deborah Thomas eventually received a call from Theresa McKinney, from Defendant Bucknell.

105. McKinney told Deborah Thomas she would let Plaintiff's professor know she was out.

106. McKinney said Plaintiff's professors can give her assignments and that she believed Plaintiff could finish the semester online.

107. Eventually Plaintiff returned home, and she and her mother reviewed emails.

108. Plaintiff received emails from professors stating she did not appear for class.

109. Plaintiff and her mother were surprised because McKinney told them she would inform her professors she would be out.

110. Defendant also did not allow Plaintiff to complete the semester online.

111. Ultimately, Plaintiff was forced to leave Defendant and never graduated from Bucknell.

## LEGAL AVERMENTS

112. Plaintiff is a member of a protected class under Title VI, the ADA and the PHRA as a Black woman and person who was disabled and/or perceived as disabled by Defendant and an individual who engaged in protected conduct.

113. Plaintiff engaged in protected conduct when she complained about race and gender discrimination and retaliation and requested an accommodation.

114. After Plaintiff engaged in protected conduct, Plaintiff was subjected to adverse actions that included, but were not limited to, being forced to leave school, being denied the accommodation of attending classes remotely or online, and not being permitted to return to school.

115. A determinative or motivating factor in the adverse actions Defendant took against Plaintiff was Plaintiff's membership in the protected categories as outlined in this Complaint.

116. Plaintiff was subjected to harassment that was severe and pervasive.

117. Plaintiff was subjected to the harassment outlined above because she is a Black woman, and because of her disability or others' perceptions about her disability.

118. A reasonable Black woman or person with a disability would find the harassment Plaintiff was subjected to so severe and pervasive that the school environment was altered and became hostile, intimidating or offensive.

119. The harassment was purposeful, intentional and willful, and was either undertaken by members of upper management or members of upper management were willfully indifferent to the harassment.

120. Because the harassment was intentionally egregious and because members of upper management either participated in the harassment or were willfully indifferent to the harassment, punitive damages are warranted.

121. Defendant is responsible for the harassment because it failed to reasonably promulgate a policy prohibiting the harassment.

122. Defendant is also liable for the harassment because Defendant delegated to the harassing individuals the authority to control the school environment, and the harassing individuals abused that authority to create a hostile school environment.

123. Defendant is also liable in this matter because it knew or should have known about the harassment and failed to take prompt and effective remedial measures to stop it.

124. Defendant is a covered institution under Title VI as an institution that receives federal funding.

125. Punitive damages are warranted in this matter because members of upper management were both directly involved in the unlawful conduct and were willfully indifferent to the unlawful conduct.

126. As a result of the unlawful conduct outlined above, Plaintiff has been forced to suffer economic and non-economic harm.

## COUNT I
## RACIAL HARASSMENT UNDER TITLE VI

127. Plaintiff hereby repeats and realleges the preceding paragraphs as though fully set forth herein.

128. Plaintiff was subjected to harassment based on her race, which had an adverse effect on her.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages, including emotional pain and suffering, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems equitable and just.

## COUNT II
## RETALIATION UNDER TITLE VI

129. Plaintiff hereby repeats and realleges the preceding paragraphs as though fully set forth herein.

130. Plaintiff engaged in protected activity under Title VI as articulated at length in this Complaint.

131. Subsequent to Plaintiff engaging in the protected activity outlined above, Defendant subjected her to adverse actions as outlined above.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages, including emotional pain and

suffering, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems equitable and just.

## COUNT III
## GENDER HARASSMENT UNDER TITLE VI

132. Plaintiff hereby repeats and realleges the preceding paragraphs as though fully set forth herein.

133. Plaintiff was subjected to harassment based on gender that had an adverse effect on her school environment.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages, including emotional pain and suffering, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems equitable and just.

## COUNT IV
## RETALIATION UNDER THE ADA

134. Plaintiff hereby repeats and realleges the preceding paragraphs as though fully set forth herein.

135. Plaintiff engaged in protected activity under the ADA as articulated at length in this Complaint.

136. Subsequent to Plaintiff engaging in the protected activity outlined above, Defendant subjected her to adverse actions as outlined above.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages, including emotional pain and

suffering, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems equitable and just.

## COUNT V
## DISABILIITY DISCRIMINATION UNDER THE ADA

137. Plaintiff hereby repeats and realleges the preceding paragraphs as though fully set forth herein.

138. Plaintiff was disabled and/or perceived as being disabled as defined by the ADA.

139. Defendant discriminated against Plaintiff because of her disability or Defendant's perceptions about her disability in violation of the ADA.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages, including emotional pain and suffering, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems equitable and just

## COUNT VI
## FAILURE TO ACCOMMODATE UNDER THE ADA

140. Plaintiff hereby repeats and realleges the preceding paragraphs as though fully set forth herein.

141. Plaintiff made a request for a reasonable accommodation because of her disability as outlined above in Plaintiff's complaint.

142. Defendant failed to engage in the interactive process or take any action to provide Plaintiff with her requested accommodation.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally

and in the alternative, together with compensatory damages, including emotional pain and suffering, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems equitable and just.

## COUNT VII
## DISABILIITY HARASSMENT UNDER THE ADA

143. Plaintiff hereby repeats and realleges the preceding paragraphs as though fully set forth herein.

144. Plaintiff was disabled and/or perceived as being disabled as defined by the ADA.

145. Plaintiff was subjected to harassment because of her disability or individual's perceptions about her disability in violation of the ADA.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages, including emotional pain and suffering, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems equitable and just

146. Plaintiff requests the following equitable remedies and relief in this matter:

   a. Plaintiff requests a declaration by this Court that the practices contested herein violate Federal law as set forth herein.

   b. Plaintiff requests that this Court order the Defendant to cease and desist all conduct inconsistent with the claims made herein going forward, both as to the specific Plaintiff and as to all other individuals similarly situated.

   c. Plaintiff requests, that in the event that equitable reinstatement and/or equitable back pay and equitable front pay is ordered to the Plaintiff, that all

15

lost wages, benefits, fringe benefits and other remuneration is also equitably restored to the Plaintiff.

d. Plaintiff requests that the Court order the Defendant to alter its files so as to expunge any reference to which the Court finds violates the statutes implicated herein.

e. Plaintiff requests that the Court do such other equity as is reasonable, appropriate and just.

**JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS, PC**

By: */s/ Drake P. Bearden, Jr.*
Drake P. Bearden, Jr.
Attorneys for Plaintiff

Dated: July 29, 2025

## **DEMAND TO PRESERVE EVIDENCE**

1.	All Defendants are hereby directed and demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's cause of action and/or prayers for relief, to any defenses to same, and pertaining to any party, including, but not limited to, electronic data storage, closed circuit TV footages, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages and any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

2.	Failure to do so will result in separate claims for spoliation of evidence and/or for appropriate adverse inferences.

> **JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS, P.C.**
>
> *s/ Drake P. Bearden, Jr.*
> Drake P. Bearden Jr.
> Attorney for Plaintiff

Dated:   July 29, 2025

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

**JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.**


*s/ Drake P. Bearden, Jr.*
Drake P. Bearden Jr.



Dated:  July 29, 2025